95 Cal.Rptr.2d 368 (2000)
80 Cal.App.4th 617
Nicholas F. COSCIA, Plaintiff and Appellant,
v.
McKENNA & CUNEO, L.L.P., et al., Defendants and Respondents.
No. D030802.
Court of Appeal, Fourth District, Division One.
May 3, 2000.
Review Granted August 9, 2000.
*369 Milberg & DePhillips and Roy L. Carlson, Jr., Cardiff By The Sea, for plaintiff and appellant.
McKenna & Cuneo, Los Angeles, Michael H. Fish and Ross H. Hyslop, San Diego, for defendant and respondent.

OPINION ON REHEARING
McINTYRE, J.
In Wiley v. County of San Diego (1998) 19 Cal.4th 532, 545, 79 Cal.Rptr.2d 672, 966 P.2d 983 (Wiley), our Supreme Court held that proof of actual innocence of underlying criminal charges is an element of a malpractice claim against criminal defense counsel. The issue here, left unresolved in Wiley, is whether a further requirement of a criminal malpractice action is that the conviction has been set aside through appeal or other post-conviction proceeding. The majority of out-of-state courts presented with the question have answered affirmatively, variously citing public policy, collateral estoppel or causation principles.
In our view, we are precluded from adopting the majority rule regardless of its substantive merits. As discussed by Justice Werdegar in her concurring opinion in Wiley, under the Supreme Court's interpretation of Code of Civil Procedure (all statutory references are to this code) section 340.6, a post-conviction relief requirement would bar most criminal malpractice actions on statute of limitations grounds. The court has held the one-year limitations period of section 340.6 is not subject to equitable tolling, and the period is not statutorily tolled pending conclusion of an appeal or other action that might rectify *370 the harm caused by the malpractice. (Wiley, supra, 19 Cal.4th at p. 532, 79 Cal. Rptr.2d 672, 966 P.2d 983 (cone. opn. of Werdegar, J.).) Because of the present statute of limitations impediment, the propriety of a post-conviction relief requirement in criminal malpractice actions may be determined only by the Supreme Court or the Legislature.
It is established in California under Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd. (1962) 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (Teitelbaum), and related cases that a guilty plea is admissible in a subsequent civil action as an admission, but it is not conclusive since the issue of guilt was not fully litigated in the criminal proceeding. We follow the Teitelbaum rule and hold, contrary to the trial court's ruling, that a standing conviction on a guilty plea does not collaterally estop the plaintiff in a criminal malpractice action from alleging and proving his or her actual innocence. Accordingly, we reverse the judgment and remand the matter for further proceedings.

BACKGROUND
In October 1993, the federal government indicted Nicholas F. Coscia for securities fraud and related counts. Coscia retained defendants McKenna & Cuneo, L.L.P, and Juanita R. Brooks (together McKenna & Cuneo where appropriate) to represent him. In December 1994 Coscia pleaded guilty to one felony count of conspiracy to violate securities laws. In response to the court's question, Coscia admitted his knowing participation in the conspiracy. On March 22, 1996, the court sentenced Coscia to two years of probation and fined him $5,000.
On March 24, 1997, Coscia sued McKenna & Cuneo for malpractice on the theory its negligence resulted in his pleading guilty to a felony rather than a misdemeanor. He reportedly asked Brooks to convey to the prosecution his willingness to exchange information on unrelated fraudulent securities activities for a misdemeanor plea; she declined because "in her opinion it would not be worth her time to present such facts to the ... prosecutors." Coscia later learned "such deals are struck all the time," and counsel's refusal to convey the offer ostensibly fell below the standard of care.
McKenna & Cuneo demurred to the complaint, arguing Coscia's action was untimely and his guilty plea collaterally estopped him from asserting and proving his actual innocence. The court took judicial notice of records from Coscia's criminal case, sustained the demurrer without leave to amend on collateral estoppel grounds and entered judgment in McKenna & Cuneo's favor.

DISCUSSION

I. Standard of Review

"The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed `if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967, 9 Cal.Rptr.2d 92, 831 P.2d 317.)

II. Effect of Guilty Plea

Generally, the elements of a legal malpractice action are the duty to use the skill and diligence as members of the profession commonly possess, breach of the duty and a proximate causal connection *371 between the breach and resulting damage. (Schultz v. Harney (1994) 27 Cal.App.4th 1611, 1621, 33 Cal.Rptr.2d 276.) It is now settled that for public policy reasons, proof of actual innocence is an additional element in a malpractice action against criminal defense counsel. (Wiley, supra, 19 Cal.4th at p. 545, 79 Cal.Rptr.2d 672, 966 P.2d 983.) "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss." (Id. at p. 539, 79 Cal.Rptr.2d 672, 966 P.2d 983.)
Coscia concedes his complaint is deficient because he did not allege his actual innocence in the underlying criminal matter. He contends, however, that the court improperly denied him leave to amend on the ground his guilty plea collaterally estopped him from asserting and proving his actual innocence.
Collateral estoppel, a form of res judicata, prevents a party from relitigating identical issues that were litigated and finally determined in a prior proceeding. (Vandenberg v. Superior Court, (1999) 21 Cal.4th 815, 828, 88 Cal.Rptr.2d 366, 982 P.2d 229.) In California, a guilty plea is ordinarily not conclusive in a subsequent civil action. In Teitelbaum supra, 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439, the court explained the rationale for distinguishing convictions by plea from convictions after trial, to which collateral estoppel ordinarily does apply, as follows:
"A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive.... When a plea of guilty has been entered in the prior action, no issues have been `drawn into controversy' by a `full presentation' of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice [citation] combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." (Id. at pp. 605-606, 25 Cal. Rptr. 559, 375 P.2d 439.)
The Teitelbaum rule "permits a party in a subsequent civil action to contest the truth of the matters admitted by his plea of guilty, present all facts surrounding the same including the nature of the charge and the plea, and explain why he entered such plea." (Arenstein v. California State Bd. of Pharmacy (1968) 265 Cal.App.2d 179, 191, 71 Cal.Rptr. 357.)
California courts have applied the Teitelbaum rule in a variety of contexts. For instance, in Pease v. Pease (1988) 201 Cal. App.3d 29, 246 Cal.Rptr. 762, the court held Teitelbaum precludes the defensive use of collateral estoppel where plaintiff previously pleaded guilty to charges at issue in the civil action. The court noted "[f]ollowing the Teitelbaum case, application of collateral estoppel has subsequently been allowed in civil cases only after the same issues have been `thoroughly litigated' in the prior criminal proceeding." (Pease v. Pease, supra, 201 Cal.App.3d at p. 33, 246 Cal.Rptr. 762, original italics.) A "plea bargain may reflect nothing more than a compromise instead of an ultimate determination of ... guilt. [A party's] due process right to a hearing ... outweighs any countervailing need to limit litigation or conserve judicial resources." (Id. at p. 34, 246 Cal.Rptr. 762, fn. omitted.) (See also People v. Blackburn (1999) 72 Cal. App.4th 1520, 1528, 86 Cal.Rptr.2d 134; Interinsurance Exchange v. Flores (1996) 45 Cal.App.4th 661, 672, 53 Cal.Rptr.2d 18; County of Los Angeles v. Civil Service Com. (1995) 39 Cal.App.4th 620, 629, fn. 8, 46 Cal.Rptr.2d 256; People v. Goodrum (1991) 228 Cal.App.3d 397, 402-03, 279 Cal.Rptr. 120; People v. Camp (1970) 10 *372 Cal.App.3d 651, 653-654, 89 Cal.Rptr. 242; Arenstein v. California State Bd. of Pharmacy, supra, 265 Cal.App.2d at p. 191, 71 Cal.Rptr. 357.)
McKenna & Cuneo contends we should not apply the Teitelbaum rule in the criminal malpractice context, and should instead adopt the majority view that the plaintiff in such an action is precluded from asserting and proving his or her actual innocence absent exoneration of the conviction through appeal or other post-conviction relief. In Wiley, the Supreme Court was not required to reach the issue, but noted that many courts imposing an actual innocence requirement in a criminal malpractice action "further require that `the person's conviction has been reversed, ... on appeal or through post-conviction relief, or the person otherwise has been exonerated.' [Citations.]" (Wiley, supra, 19 Cal.4th at p. 536, fn. 2, 79 Cal.Rptr.2d 672, 966 P.2d 983, quoting Stevens v. Bispham (1993) 316 Or. 221, 851 P.2d 556, 561.)
In Stevens, for instance, the Oregon Supreme Court held an undisturbed guilty plea precluded a malpractice action because "[i]n view of the extensive statutory provisions already in place for the protection of convicted offenders [including relief through a habeas corpus proceeding for ineffective assistance of counsel], ... it would be inappropriate to treat victims of alleged negligence by defense counsel as having been `harmed,' for the purpose of maintaining a legal malpractice action ... unless they show that their counsel failed to meet the established standards in a way that would make post-conviction relief appropriate." (Stevens v. Bispham, supra, 851 P.2d at p. 562.)
In Peeler v. Hughes & Luce (Tex.1995) 909 S.W.2d 494, 497-498, the Texas Supreme Court held a standing guilty plea is a "sole proximate cause bar" to a criminal malpractice claim. (Id. at pp. 497-498.) "[P]ublic policy prohibits convicts from profiting from their illegal conduct, [and] allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict. This opportunity to shift much, if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys, drastically diminishes the consequences of the convicts' criminal conduct and seriously undermines our system of criminal justice." (Id. at p. 498; see also Labovitz v. Feinberg (1999) 47 Mass.App.Ct. 306, 713 N.E.2d 379 [guilty plea]; Shaw v. State, Dept. of Admin., PDA (Ala.1991) 816 P.2d 1358 [jury trial]; Carmel v. Lunney (1987) 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 [guilty plea]; State ex rel. O'Blennis v. Adolf (Mo.App.1985) 691 S.W.2d 498 [guilty plea]; but see Krahn v. Kinney (1989) 43 Ohio St.3d 103, 538 N.E.2d 1058; Jepson v. Stubbs (Mo.1977) 555 S.W.2d 307.)
Notably, jurisdictions holding that post-conviction exoneration is a prerequisite to a criminal malpractice action also hold "that the statute of limitations does not begin to run, and an action for legal malpractice does not accrue, until a criminal defendant receives relief from his conviction." (Silvers v. Brodeur (Ind.App.1997) 682 N.E.2d 811, 815; see also Stevens v. Bispham, supra, 851 P.2d at p. 565 [plaintiff did not suffer legally cognizable harm until exonerated of the underlying criminal offense]; Shaw v. State, Dept. of Admin., PDA supra, 816 P.2d at p. 1360 ["Given that obtaining [post-conviction] relief will remain uncertain until actually granted, the statute of limitations for filing legal malpractice claims must be tolled until such relief is granted"].)
In Wiley, the majority acknowledged that the adoption in California of a post-conviction relief requirement for criminal malpractice actions would have "significant implications ... for determining statute of limitations ... issues." (Wiley, supra, 19 Cal.4th at pp. 536-537, fn. 2, 79 Cal. Rptr.2d 672, 966 P.2d 983.) Section 340.6 requires that a legal malpractice action be filed within one year of actual or constructive discovery of the elements of a cause of action, or within four years of the wrongful *373 act or omission, whichever occurs first. (§ 340.6, subd. (a).)
The Supreme Court has held that equitable tolling is inapplicable to section 340.6. (Laird v. Blacker (1992) 2 Cal.4th 606, 618, 7 Cal.Rptr.2d 550, 828 P.2d 691 (Laird); Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 757, 76 Cal.Rptr.2d 749, 958 P.2d 1062 (Jordache).) The time limitations of section 340.6, however, are expressly tolled during the following times:
"(1) The plaintiff has not sustained actual injury;
"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;
"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney [applicable only to the four-year period] ...; and
"(4) The plaintiff is under a legal or physical disability which restricts the plaintiffs ability to commence legal action." (§ 340.6, subd. (a)(1)-(4).)
McKenna & Cuneo asserts the statute of limitations in criminal malpractice actions would be tolled under subdivision (a)(1) of section 340.6 pending the plaintiffs obtaining post-conviction relief, because he or she sustains no "actual injury" until exonerated from the underlying charges. This contention ignores the Supreme Court's interpretation of "actual injury" within the meaning of the tolling provision.
In Laird, the court rejected plaintiffs argument that her malpractice action was tolled under section 340.6, subdivision (a)(1) pending resolution of her appeal in the underlying case. The court held a cause of action accrues under section 340.6 "when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice." (Laird, supra, 2 Cal.4th at p. 611, 7 Cal.Rptr.2d 550, 828 P.2d 691.) The court reasoned that "`an injury does not disappear or become suspended because a more final adjudication of the result is sought.' [Citation.]" (Id. at p. 615, 7 Cal.Rptr.2d 550, 828 P.2d 691.) The court further explained: "If we ... hold that the statute is tolled pending an appeal, we allow clients, with knowledge that they have suffered actual injury, unilaterally to control the commencement of the statute of limitations and hence undermine the legislative goal of resolving cases while the evidence is fresh, witnesses are available, and memories have not faded." (Laird, supra, 2 Cal.4th at p. 618, 7 Cal. Rptr.2d 550, 828 P.2d 691.)
In Adams v. Paul (1995) 11 Cal.4th 583, 46 Cal.Rptr.2d 594, 904 P.2d 1205 (Adams), the Supreme Court held the date of "actual injury" within the meaning of subdivision (a)(1) of section 340.6 is predominantly one of fact, and the inquiry should be guided by the following principles: "the fact of damage rather than the amount is the relevant consideration"; "the character or quality of the injury must be manifest and palpable," and "`nominal damages, speculative harm, or the threat of future harmnot yet realizeddoes not suffice[.]'" (Id. at p. 589, 46 Cal.Rptr.2d 594, 904 P.2d 1205, original italics.)
In Jordache, supra, 18 Cal.4th at page 763, 76 Cal.Rptr.2d 749, 958 P.2d 1062, the Supreme Court overruled ITT Small Business Finance Corp. v. Niles (1994) 9 Cal.4th 245, 36 Cal.Rptr.2d 552, 885 P.2d 965 (ITT), in which it held that in transactional legal malpractice cases, the limitations period of section 340.6 did not begin running until resolution of related actions that may rectify the harm caused by the malpractice. (ITT, supra, 9 Cal.4th at p. 258, 36 Cal.Rptr.2d 552, 885 P.2d 965.) The court explained it failed to acknowledge in ITT that plaintiff sustained "actual injury" when she incurred attorney fees "to defend negligently prepared documents and reduce the alleged error's effects." (Jordache, supra, 18 Cal.4th at p. 763, 76 *374 Cal.Rptr.2d 749, 958 P.2d 1062.) The court held "[a]ctual injury occurs [under section 340.6] when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (Jordache, supra, 18 Cal.4th at p. 743, 76 Cal. Rptr.2d 749, 958 P.2d 1062.) "Ordinarily, the client already has suffered damage when it discovers the attorney's error." (Jordache, supra, 18 Cal.4th at p. 743, 76 Cal.Rptr.2d 749, 958 P.2d 1062; see also Budd v. Nixen (1971) 6 Cal.3d 195, 201, 98 Cal.Rptr. 849, 491 P.2d 433 ["Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage"].)
We conclude that a criminal conviction with its attendant financial and social ramifications, incarceration, probation, fines or other damaging consequenceswould constitute appreciable harm, or "actual injury" under the Supreme Court's interpretation of section 340.6, subdivision (a)(1).
We also reject McKenna & Cuneo's contention the express tolling provision of subdivision (a)(4) of section 340.6 for "legal disability" would extend the one-year limitations period in a criminal malpractice action pending plaintiffs exoneration through post-conviction relief. The term "legal disability" is not defined, but the Legislative history shows subdivision (a)(4) of section 340.6 was intended to continue section 352's tolling of a legal malpractice action pending plaintiffs minority, insanity or incarceration. (Sen. Com. on Judiciary, com. on Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977.) In fact, an earlier version of subdivision (a)(4) of section 340.6 provided for tolling "when circumstances beyond the plaintiffs control, such as incarceration or confinement to a mental facility, exist." (Assem. Amend, to Assem. Bill No. 298 (1977-1978 Reg. Sess.) May 9, 1977.)
In her concurring opinion in Wiley, Justice Werdegar recognized the inherent statute of limitations problem in requiring post-conviction relief in criminal malpractice cases. She cautioned as follows:
"One problem with announcing a new, policy-based rule is that unintended consequences invariably follow. So it is here. Our court has in recent years made it abundantly clear that we will strictly follow the statute that governs the accrual and limitation of claims for attorney malpractice. [Citations.] Under [section 340.6], an action against an attorney for a wrongful act or omission must ordinarily be commenced within one year after the plaintiff discovers, or should have discovered, the facts constituting the wrongful act or omission. In view of the time required to decide appeals and petitions for habeas corpus in criminal cases, the statute of limitations in most cases likely will run long before the convicted person has a chance to have the conviction set aside and, thus, remove the bar (collateral estoppel) to establishing his or her actual innocence. The majority alludes to this problem, but offers no solution. [Citation.] Indeed, I see no ready solution, considering that we have soundly condemned all nonstatutory tolling rules (see Jordache, supra, 18 Cal.4th at pp. 755-758 [76 Cal.Rptr.2d 749, 958 P.2d 1062]), including our own prior effort to redefine the element of `damages' so as to prevent the accrual of a cause of action for malpractice until all related lawsuits that might undo the harm caused by the malpractice have concluded (see ITT....., supra, 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] limited in Adams, supra, 11 Cal.4th at p. 588 [46 Cal.Rptr.2d 594, 904 P.2d 1205], and overruled in Jordache, supra, 18 Cal.4th at p. 763 [76 Cal.Rptr.2d 749, 958 P.2d 1062]). How, without undoing Jordache and Adams, might we hold that a cause of action for criminal malpractice does not accrue until the underlying conviction is set aside?" (Wiley, supra, 19 Cal.4th at pp. 546-547, 79 Cal.Rptr.2d 672, 966 P.2d 983 (cone. opn. of Werdegar, J.).)
*375 "[T]here is a `strong public policy that litigation be disposed of on the merits wherever possible.' [Citation.]" (Steketee v. Lintz, Williams & Rothberg (1985) 38 Cal.3d 46, 56-57, 210 Cal.Rptr. 781, 694 P.2d 1153.) The interest of plaintiffs in pursuing meritorious claims, and considerations of fairness (see Jordache, supra, 18 Cal.4th at p. 756, 76 Cal.Rptr.2d 749, 958 P.2d 1062), preclude us from adopting a rule that under existing law would result in the forfeiture of most criminal malpractice actions on technical grounds.
We thus follow the Teitelbaum line of cases and hold that a standing conviction on a guilty plea does not preclude a criminal malpractice action or collaterally estop the plaintiff from asserting and proving his or her actual innocence therein. Because there is a reasonable probability Coscia could have cured the defect in his complaint, the court should have given him leave to amend. Although proof of actual innocence is an onerous burden given Coscia's admission of guilt, his claims should not be foreclosed at this early pleading stage.

III. Timeliness

McKenna & Cuneo also contends Coscia's complaint was untimely because he filed it about three years after he pleaded guilty to the conspiracy count and one year and two days after he was sentenced. McKenna & Cuneo largely ignores the discovery element of a legal malpractice cause of action. The "`discovery of the facts essential to the malpractice claim and the suffering of actual harm from the malpractice establish a cause of action and begin the running of the statute of limitations' embodied in section 340.6." (Fantazia v. County of Stanislaus (1996) 41 Cal. App.4th 1444, 1450, 49 Cal.Rptr.2d 177, original italics.) Whether plaintiff was sufficiently diligent in discovering malpractice is generally a question of fact for the jury's determination. (Baright v. Willis (1984) 151 Cal.App.3d 303, 311, 198 Cal.Rptr. 510.)
"`"`[T]he showing of excuse for late filing must be made in the complaint.... The complaint must set forth specifically (1) the facts of the time and manner of discovery....' [Citation.]"' [Citations.]" (Kirby v. Albert D. Seeno Construction Co. (1992) 11 Cal.App.4th 1059, 1068, 14 Cal.Rptr.2d 604; Mangini v. Aerojet-General Corp. (1991) 230 Cal. App.3d 1125, 1150, 281 Cal.Rptr. 827; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 884, pp. 343-344.) Coscia's complaint includes no allegations of late discovery. However, in opposition to the demurrer, Coscia declared he was unaware of McKenna & Cuneo's "negligence in this matter until July, 1996, when [he] had a discussion with an Assistant United States Attorney. Based upon this information, it became apparent for the first time that the advice given ... with respect to the guilty plea ... was incorrect." These allegations, if added to the complaint, are sufficient to withstand a demurrer based on the statute of limitations. The court thus should have given Coscia an opportunity to amend.

DISPOSITION
The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Coscia is to recover costs on appeal.
McDONALD, Acting P.J., and QUINN, J.[*], concur.
NOTES
[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.